UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

FLORINDA FUSCO HANCOCK,

Plaintiff,

v. CASE NO. 5:26-cv-212-SJH

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_______________________________/

**MEMORANDUM ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application under the Social Security Act ("Act") for Supplemental Security Income ("SSI"). In a decision dated June 10, 2025, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability from March 7, 2023, the alleged disability application date, through the date of decision. Tr. 17–27. For the reasons herein, the Commissioner's decision is **affirmed**.

**I. Standard of Review**

Plaintiff appeals the denial of her application for SSI under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* The terms of judicial review are set by 42 U.S.C. § 405(g). *See* 42 U.S.C. § 1383(c)(3) (incorporating § 405(g)).[2] Under § 405(g), judicial review "is

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.

[2] The regulations under Title XVI are located at 20 CFR pt. 416.

limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Ohneck v. Comm'r, Soc. Sec. Admin.*, No. 22-13984, 2023 WL 8946613, at *2 (11th Cir. Dec. 28, 2023).[3]

The agency's factual findings are "conclusive" if "substantial evidence" supports them. *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (citation omitted). Though requiring "more than a mere scintilla" of evidence, the threshold for this standard "is not high[,]" *id.* (citation omitted), and does not require a preponderance of the evidence, *Flowers v. Comm'r, Soc. Sec. Admin.*, 97 F.4th 1300, 1309 (11th Cir. 2024); *see also Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015). So long as "the ALJ's decision clears the low evidentiary bar[,]" a reviewing court must affirm even if it "would have reached a different result and even if a preponderance of the evidence weighs against the Commissioner's decision[.]" *Flowers*, 97 F.4th at 1309. A reviewing court may not "decide the facts anew, make credibility determinations, or re-weigh evidence." *Id.* at 1306 (citation omitted); *see also Rodriguez v. Soc. Sec. Admin.*, 118 F.4th 1302, 1315–16 (11th Cir. 2024); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The same deference does not attach to conclusions of law. *See Flowers*, 97 F.4th

[3] Unpublished opinions are not binding precedent; however, they may be cited when persuasive on a particular point. *See United States v. Futrell*, 209 F.3d 1286, 1289–90 (11th Cir. 2000); 11th Cir. R. 36-2.

at 1304, 1306; *Martin*, 894 F.2d at 1529. A "failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal." *Martin*, 894 F.2d at 1529; *see also Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

On review, "it is proper to read the ALJ's decision as a whole, and ... it would be a needless formality to have the ALJ repeat substantially similar factual analyses[.]" *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1275 (11th Cir. 2024) (citations omitted); *see also Martin v. Comm'r of Soc. Sec.*, No. 8:22-cv-1435-JSS, 2023 WL 3644419, at *7 (M.D. Fla. May 25, 2023); *Jesus v. Comm'r of Soc. Sec.*, No. 6:20-cv-1930-EJK, 2022 WL 2293887, at *4 (M.D. Fla. Feb. 9, 2022).

## II. The ALJ's Decision

Under the Act's general statutory definition, a person is considered disabled if unable to engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least 12 months. *See* 42 U.S.C. § 1382c(a)(3)(A).[4] In making a disability determination, the Social Security Administration generally uses a five-step sequential process. 20 C.F.R. § 416.920(a)(4).[5] The ALJ applied this

---

[4] Because the definitions of disability under Title II and Title XVI are the same, cases under one statute are generally persuasive as to the other. *See Jones v. Astrue*, No. 3:10-cv-914-J-JBT, 2011 WL 13173806, at *2 n.2 (M.D. Fla. Oct. 17, 2011).

[5] At step one, the person must show the person is not engaged in substantial gainful activity. At step two, the person must show the person has a severe impairment or combination of impairments. At step three, the person may show the impairment or combination of impairments meets or equals the severity of one of the listings in the appendix of the applicable regulations. Absent such a showing,

five-step sequential process. Tr. at 18–27. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 7, 2023, the application date. *Id.* at 19. The ALJ found at step two that Plaintiff had "the following severe impairments: chronic obstructive pulmonary disease (COPD); hepatic steatosis; hypoglycemia; post-traumatic stress disorder (PTSD); anxiety; depression; and mood disorder (20 CFR 416.920(c))." *Id.* (emphasis removed). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or equals a listed impairment. *Id.* at 20. The ALJ found that Plaintiff had the following residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 416.967(b) except the claimant can lift up to 20 pounds occasionally and 10 pounds frequently; can stand and walk up to 6 hours, and sit up to 6 hours, in an 8 hour workday; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can perform work which does not require exposure to loud noise, temperature extremes, pulmonary irritants, vibration, hazardous machinery, and heights; can understand, remember, and carry out routine and repetitive instructions and tasks; can manage or deal with occasional changes in routine work settings or duties; can perform work which does not require a specific production rate or pace, such as assembly lines; can have occasional interaction with the public, coworkers, and supervisors; and can maintain attention and concentration for 2 hours at a time, but does require the standard morning, lunch, and afternoon breaks.

---

at step four, the person must show the person cannot perform the person's past relevant work given the person's residual functional capacity ("RFC"). Step five, at which the burden temporarily shifts to the Commissioner, asks whether there are a significant number of jobs in the national economy the person can perform given the person's RFC, age, education, and work experience. If it is determined at any step the person is or is not disabled, the analysis ends without proceeding further. *See* 20 C.F.R. § 416.920(a)(4); *Flowers*, 97 F.4th at 1308–09; *Jacob v. Comm'r of Soc. Sec.*, No. 8:22-cv-2435-CEH-TGW, 2024 WL 3548902, at *3–4 (M.D. Fla. July 26, 2024).

*Id.* at 22 (emphasis removed). The ALJ found at step four that Plaintiff had no past relevant work, but found at step five that jobs exist in significant numbers in the national economy that she can perform, such that she has not been under a disability from the application date through the date of decision. *Id.* at 25–27.

## III. Discussion

Plaintiff raises three issues on appeal, arguing as follows:

> Issue No. 1: The ALJ's Determination that Ms. Fusco Hancock Could never Work in Environments with Pulmonary Irritants Would Preclude Work Pursuant to SSR 85-15p[.]
>
> Issue No. 2: The ALJ Failed to Develop the Record, by Failing to Re-contact Dr. Ng, the consultative Examining Doctor, Whose Physical RFC Opinion had Conflicting Exertional Limitations.
>
> Issue No. 3: The ALJ Failed to Properly Consider the Persuasiveness of the Opinion of Dr. Booth, the Consultative Psychologist[.]

Doc. 19 at 3. The undersigned addresses each issue in turn.

### a. Issue One

As the first issue, Plaintiff argues that the ALJ imposed an RFC with no exposure to pulmonary irritants and as a result SSR 85-15 required "vocational expert testimony" to determine that Plaintiff could perform jobs without exposure to pulmonary irritants. Doc. 19 at 3–6. But the ALJ expressly considered and found support from the testimony of a vocational expert ("VE"). Tr. at 25–27. Plaintiff does not dispute this. Doc. 19 at 5. Plaintiff argues, without explanation or support, that the VE failed to address the pulmonary-irritant restriction. *Id.* However, the ALJ's hypothetical to the VE, and in turn the VE's testimony as to the jobs a person with the

specified limitations could perform, specifically included a no-pulmonary-irritants restriction. Tr. at 50–51.[6]

In short, the ALJ considered the testimony of a qualified VE, to which Plaintiff did not object, and the VE's testimony expressly considered the pulmonary-irritant restriction. Substantial evidence supports the ALJ's step-five finding, and nothing more was required under SSR 85-15. *See, e.g.*, *Walters v. Colvin*, 604 F. App'x 643, 649 (10th Cir. 2015) ("The ALJ's hypothetical question to the VE included a limitation of avoiding 'all exposure to fumes, odors, dust and other pulmonary irritants[.]' The jobs the VE identified as appropriate for [the plaintiff] included this restriction, in compliance with SSR 85–15." (internal citation omitted)); *Felix B. v. Kijakazi*, No. 2:22-cv-585, 2023 WL 5243326, at *4–5 (D. Utah July 12, 2023) (rejecting argument that "the vocational expert's testimony regarding the housekeeping/cleaner occupation is inconsistent with the RFC's restriction on exposure to pulmonary irritants"; explaining that "SSR 85-15 does not mandate a finding of disability based on a complete restriction on exposure to irritants or pollutants" and "does not state all work is precluded" based on such a restriction; and finding that "the ALJ did not err in utilizing a vocational expert to determine whether [the plaintiff] was capable of

[6] To the extent Plaintiff's argument could be construed otherwise, the pertinent question is not whether a vocational "expert's testimony is supported by substantial evidence. It is whether the ALJ's decision is supported by substantial evidence." *Pace v. Comm'r of Soc. Sec.*, 760 F. App'x 779, 781 (11th Cir. 2019); *see also Alfieri v. Comm'r of Soc. Sec.*, No. 8:24-cv-2269-NPM, 2025 WL 2778265, at *5 (M.D. Fla. Sept. 30, 2025). Moreover, asked directly, Plaintiff's representative did not object to the VE's qualifications or testimony as an expert. Tr. at 50; *see also Alfieri*, 2025 WL 2778265, at *5. Plaintiff's representative even cross examined the VE on other topics but asked no questions regarding pulmonary irritants. Tr. at 54–58; *see also Alfieri*, 2025 WL 2778265, at *5.

performing other work at step five"), *report and recommendation adopted,* 2023 WL 5237948 (D. Utah Aug. 15, 2023); *Hill v. Comm'r of Soc. Sec.*, No. 2:22-cv-39-SPC-NPM, 2023 WL 2919821, at *8 (M.D. Fla. Jan. 31, 2023) (rejecting argument that "because very few job environments are entirely free of irritants, the RFC limitation would rule out any work as a security guard" because "since a vocational expert (or specialist) testified at the hearing on this very issue, the ALJ's approach was consistent with" SSR 85-15), *report and recommendation adopted*, 2023 WL 2728220 (M.D. Fla. Mar. 31, 2023); *cf. Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 611 (11th Cir. 2015).[7]

**b. Issue Two**

As the second issue, Plaintiff argues the ALJ failed to adequately develop the record because, although the ALJ obtained a consultative examination from Dr. Jason Ng, the ALJ failed to recontact Dr. Ng after correctly identifying a partial conflict in Dr. Ng's opinion. Doc. 19 at 6–11. The ALJ explained in pertinent part as follows:

> Jason Ng, DO completed a consultative physical examination of the claimant on February 22, 2025. Dr. Ng reported that the examination revealed that the claimant had full range of motion, her heart had regular rate and rhythm without murmurs, rubs, or gallop, her lungs were clear, her memory was normal, her concentration was good, her gait and station were normal, she used no assistive device, an assistive device was not medically necessary, her memory was normal, her concentration was good, her eye hand coordination was good, she had no palpable muscle spasms, she had full 5/5 muscle strength in her bilateral upper and lower

[7] The undersigned further notes that the ALJ found that each of the jobs identified by the VE, considered singularly and in combination, supported his step-five finding. Tr. at 26–27. And Plaintiff has offered no evidence that *any* of the jobs require exposure to pulmonary irritants (contrary to the unobjected-to expert testimony). Doc. 19 at 3–6. As such, even if the ALJ had erred, and he did not, any such error would be harmless. *See Felix B.*, 2023 WL 5243326, at *5.

> extremities, her sensation was intact, her reflexes were symmetric, she could lift, carry, and handle light objects, she could perform a full squat without difficulty, she could rise from a seated position and get on and off the examination table without assistance, she could not walk on her heels or toes, and she could not stand and hop on one foot bilaterally (Exhibit 14F). Dr. Ng completed a medical source statement and opined that the claimant could lift 50 pounds occasionally and 20 pounds frequently, could carry 20 pounds frequently, could sit 8 hours at one time and a total of 4 hours per day, could stand 8 hours at a time and a total of 2 hours per day, could walk 2 hours at a time and 2 hours total per day, did not require cane to ambulate, could frequently climb, balance, stoop, kneel, crouch, and crawl, and must avoid loud noise (Exhibit 14F).
>
> …
>
> The opinion of Dr. Ng (Exhibit 14F) is partially persuasive because it is based on a physical examination, and it is generally consistent with and supported by the objective clinical physical examination and testing findings reported by the claimant's own providers. However, the opinion is not fully persuasive because the evidence does not support a finding that the claimant co[u]ld lift up to 50 pounds occasionally, and there is a conflict in the opinion that the claimant could stand, walk and sit for up to 8 hours at a time, but was limited to 4 hours of sitting, 2 hours of standing, and 2 hours of walking, and these limitations are not consistent with or supported by the physical examination or testing findings reported by the claimant's own providers, or by Dr. Ng.

Tr. at 24–25.

The ALJ "has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram*, 496 F.3d at 1269; *see also Ferrell v. Comm'r of Soc. Sec.*, No. 25-11600, 2026 WL 308862, at *2 (11th Cir. Feb. 5, 2026) ("While the Commissioner 'has a duty to develop the record where appropriate,' there is no requirement 'to order a consultative examination as long as the record contains sufficient evidence' to support 'an informed decision.'" (citations omitted)); *Castle v.*

*Colvin*, 557 F. App'x 849, 852 (11th Cir. 2014) ("The district court erred in concluding that the ALJ's RFC finding was not supported by substantial evidence. On the contrary, the record was fully and fairly developed, and a consultative examination was unnecessary.").

Though Plaintiff's framing of her argument could be construed to suggest otherwise, the ALJ was not required to base the RFC on any particular medical opinion. *See, e.g.*, *Hamilton v. Bisignano*, No. 8:25-cv-235-CPT, 2026 WL 864914, at *4 (M.D. Fla. Mar. 30, 2026) (explaining that the "ALJ does not 'play doctor' ... merely by determining a claimant's RFC based upon his review of the record as a whole"; "the pertinent regulations obligate an ALJ to render such an assessment"; "there is no directive that an ALJ must ground his RFC finding on a medical source opinion"; and "all that is necessary is that the ALJ's RFC finding be buttressed by substantial evidence"); *Riley v. Comm'r of Soc. Sec.*, No. 6:22-cv-1415-DCI, 2023 WL 2894366, at *3–4 (M.D. Fla. Apr. 11, 2023) (explaining that "there is no requirement that an RFC must be based on a physician's opinion"; the "ALJ does not impermissibly assume the role of a doctor by viewing the record evidence as a whole and making an RFC determination"; and the "ALJ need not obtain additional information, seek expert medical testimony, nor order a consultative examination when the record is sufficient to make a disability determination"); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-cv-962-SPC-NPM, 2022 WL 598036, at *8 (M.D. Fla. Feb. 10, 2022) (explaining that "it is the ALJ's responsibility to determine the ultimate issue of a claimant's RFC, not the doctors" and "there is no requirement that an ALJ base the RFC finding on a medical

source's opinion"), *report and recommendation adopted*, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022).

The ALJ did not err or fail to develop the record. Indeed, the ALJ *obtained* a full physical consultative examination—and Plaintiff herself does not genuinely argue that the examination was incomplete or the results too complex to readily understand. *See* Doc. 19 at 6–11. To the contrary, Plaintiff acknowledges, as the ALJ properly explained, that "Dr. Ng's physical examination was mostly normal with the only limitations of could not stand or hop on one foot and could not walk on heels or toes." *Id.* at 6; *see also* Tr. at 24–25, 549–64. The ALJ did not err in failing to develop the record. *See, e.g.*, *Castle*, 557 F. App'x at 852–54; *Moore v. Kijakazi*, No. 8:23-cv-206-AAS, 2023 WL 8187216, at *7–9 (M.D. Fla. Nov. 27, 2023).

Moreover, even if the ALJ had failed to fully develop the record—which, as discussed the ALJ did not—any such error does not merit remand absent prejudice. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) ("However, there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record. The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" (internal citations omitted)); *see also Childers v. Soc. Sec. Admin., Comm'r*, 521 F. App'x 809, 815 (11th Cir. 2013) ("Whether or not a claimant is represented by counsel, an ALJ has a duty to develop a full and fair record. Failure to fulfill this duty, however, only necessitates a remand if 'the record reveals evidentiary gaps which result in unfairness or clear

prejudice.'" (citations omitted)). Speculation is insufficient to demonstrate prejudice. *See Estes v. Comm'r of Soc. Sec.*, No. 2:20-cv-225-JLB-NPM, 2021 WL 4822599, at *5 (M.D. Fla. Aug. 2, 2021), *report and recommendation adopted*, 2021 WL 3910134 (M.D. Fla. Sept. 1, 2021); *see also Ferrell*, 2026 WL 308862, at *2; *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985).

Plaintiff has not shown prejudice.[8] Again, Plaintiff does not challenge that the consultative examination itself was complete and sufficient, asserting instead that the ALJ should have requested clarification or a new examination to clear up only the inconsistency in Dr. Ng's ultimate opinion as to Plaintiff's functional capacity with respect to standing, sitting, and walking. Doc. 19 at 6–11. But to the extent of the conflict as to the opinions of Dr. Ng, Plaintiff points to no evidence supporting the greater limitations. Plaintiff even acknowledges, as the ALJ indicated, the "mostly normal" examination results from Dr. Ng (without arguing how the ability to hop on one foot or walk on heels or toes were inconsistent with the RFC ultimately imposed by the ALJ). Doc. 19 at 6. To that end, and further reinforcing the lack of prejudice, the ALJ correctly noted the inconsistency in Dr. Ng's opinion but nevertheless explained why *even if* any greater restrictions than imposed by the ALJ had been

[8] Plaintiff's argument as to prejudice is particularly unpersuasive to the extent that it appears to suggest that a conflict in Dr. Ng's opinion as to certain *physical* limitations left a gap in the evidence as to *mental* limitations. Doc. 19 at 11 ("The ALJ's failure to obtain a physical medical source statement without conflicts which were determinative in Ms. Fusco Hancock's case left a gap in the evidence which was necessary for the ALJ to make an informed decision. The ALJ instead acted as medical expert, basing his mental RFC on speculation, acting as both judge and physician. The ALJ is not a medical expert, and his mental RFC was based on speculation without any physician completing an accurate functional analysis of Ms. Fusco Hancock's ability to stand and walk in an eight-hour day.").

intended as an opinion of Dr. Ng, such were not persuasive. Tr. at 25. Contrary to any suggestion otherwise from Plaintiff, the ALJ did not discount any opinions of Dr. Ng *solely* on internal inconsistency. *Id.* The ALJ further explained, with respect to any greater limitations deemed unpersuasive, that "these limitations are not consistent with or supported by the physical examination or testing findings reported by the claimant's own providers, or by Dr. Ng." *Id.*

Plaintiff does not, and cannot, demonstrate that this analysis was insufficient, so even assuming the ALJ had asked for clarification and even assuming Dr. Ng had in turn clarified to a more restrictive opinion, the result would have been the same, as such limitations were deemed unpersuasive by the ALJ and the ALJ's analysis is supported by substantial evidence. *See id.* To that end, in determining the persuasiveness of a medical source's medical opinions, supportability and consistency are the two most important factors. 20 C.F.R. § 416.920c(b)(2). The ALJ *must* explain the consideration of these two factors and *may*, but need not, explain consideration of the others. *Id.* As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). As to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2). In short,

"the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record." *Perron v. O'Malley*, No. 8:23-cv-2051-WFJ-SPF, 2024 WL 4144163, at *6 (M.D. Fla. July 29, 2024), *report and recommendation adopted*, 2024 WL 3948889 (M.D. Fla. Aug. 27, 2024); *see also Barber v. Comm'r of Soc. Sec.*, No. 6:20-cv-1222-LRH, 2021 WL 3857562, at *3 (M.D. Fla. Aug. 30, 2021).

The ALJ did so, explaining that to the extent they were intended based on the conflicts in Dr. Ng's opinions, any greater limitations were not consistent with or supported by the records and findings of Plaintiff's own providers (*i.e.*, consistency) or Dr. Ng (*i.e.*, supportability). Tr. at 25. And substantial evidence supports this analysis. For example, as to consistency, the ALJ explained that cardiac testing in December 2022 "included a stress test, which showed moderate ischemia, and cardiac catheterization, which showed no evidence of coronary artery disease" and that following the "emergency department visit and cardiac testing in December 2022, there are no reports in evidence showing that the claimant sought follow up care with a cardiologist or any other medical provider for any reason in 2023." Tr. at 23. With respect to supportability, Plaintiff concedes the mostly normal findings of Dr. Ng's examination, Doc. 19 at 6, which the ALJ detailed, Tr. at 24 ("Dr. Ng reported that the examination revealed that the claimant had full range of motion, her heart had regular rate and rhythm without murmurs, rubs, or gallop, her lungs were clear, her memory was normal, her concentration was good, her gait and station were normal, she used no assistive device, an assistive device was not medically necessary, her

memory was normal, her concentration was good, her eye hand coordination was good, she had no palpable muscle spasms, she had full 5/5 muscle strength in her bilateral upper and lower extremities, her sensation was intact, her reflexes were symmetric, she could lift, carry, and handle light objects, she could perform a full squat without difficulty, she could rise from a seated position and get on and off the examination table without assistance, she could not walk on her heels or toes, and she could not stand and hop on one foot bilaterally[.]").

Finally, the ALJ asked about the record at the hearing, and Plaintiff's representative indicated that the record was complete with no mention of or request for any clarification from Dr. Ng, additional consultative examination, and/or further development of the record. Tr. at 36–37. This further demonstrates a lack of prejudice (and may even preclude Plaintiff's argument as to issue two). *See Ferrell*, 2026 WL 308862, at *2; *Jervis v. Bisignano*, No. 8:24-cv-2751-AEP, 2026 WL 522989, at *5–6 (M.D. Fla. Feb. 25, 2026).

**c. Issue Three**

As the third issue, Plaintiff argues the ALJ failed to properly consider the opinion of the consultative psychologist, Dr. Alexis Booth. Doc. 19 at 11–17. As background, at step three, the ALJ stated in pertinent part as follows:

> In understanding, remembering or applying information, the claimant has a moderate limitation. In making this finding, the undersigned relies on the distinct absence of signs from the claimant's health providers that would demonstrate anything more than moderate difficulty in this area, the report from the consultative psychological examination, and the claimant's own reports and hearing testimony. In the report from a psychiatric evaluation completed during an emergency department visit

on December 17, 2022, Vasthie Artega, MD reported that a mental status examination revealed that the claimant's attention, concentration, and short term memory were intact, she had no apparent deficits in intellectual functioning, and her intelligence appeared to be average based on fund of knowledge, vocabulary, and abstract reasoning (Exhibit 1F). In the report from the consultative psychological examination completed on February 21, 2025, Alexis Booth, Psy.D reported that the claimant's immediate memory appeared to be adequate, her recent memory appeared to be fair, and her remote memory appeared to be adequate. Dr. Booth further reported that the claimant demonstrated adequate mental computation as she was able to complete basic verbal arithmetic problems without errors (Exhibit 13F). In her function report, the claimant reported that she was able to complete activities of daily living such as preparing meals, completing light housekeeping tasks, leaving her residence independently, driving, shopping in stores and online, and managing her finances (Exhibit 3E). At the hearing, the undersigned observed that the claimant paid good attention, was well focused, understood the questions, and gave relevant and detailed answers. The claimant was able to give detailed responses to questions regarding the history of her employment and medical treatment. The evidence received at the hearing level, including the testimony of the claimant, supports a finding that the claimant has a moderate limitation in her ability to understand, remember, and apply information.

In interacting with others, the claimant has a moderate limitation. In her function report, the claimant reported that she did not have any problems getting along with family, friends, neighbors, or others (Exhibit 3E). It is also noted that none of the records from any of the claimant's medical providers report that the claimant had any particular difficulty getting along with others in a treatment setting (either with staff or with other patients). The claimant was polite and appropriate at the hearing and responded to questions adequately and cooperatively. However, Dr. Booth reported that the claimant demonstrated limited social skills during the consultative psychological examination (Exhibit 13F). The evidence received at the hearing level, including the testimony of the claimant and the report of Dr. Booth, supports a finding that the claimant has a moderate limitation in her ability to interact with others.

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. In her function report, the claimant reported that she had mental limitations in memory, concentration, and understanding (Exhibit 3E). As noted above, however, Dr. Artega reported that the claimant's concentration was intact (Exhibit 1F), and in

> the report from the consultative psychological examination, Dr. Booth reported that the claimant demonstrated impaired attention and concentration as she was unable to attend to the evaluator's questions throughout the interview without distraction [and was] unable to complete tasks of alphabetic and numeric reiteration without errors. Dr. Booth further reported that the claimant's mental flexibility appeared to be mildly impaired as she was unable to spell the word "world" backward. However, Dr. Booth also reported that the claimant did not display any significant difficulties in processing speed, that her receptive language appeared to be adequate, and her expressive language appeared to be adequate (Exhibit 13F). At the hearing, the claimant demonstrated that she was able to concentrate to a significant degree, as she was able to understand the questions asked, without requesting repetition or rephrasing, and was able to give relevant responses to the questions. The evidence received at the hearing level, including the testimony of the claimant, supports a finding that the claimant has a moderate limitation in her ability to concentrate, persist, or maintain pace.
>
> As for adapting or managing oneself, the claimant has experienced a moderate limitation. The reports that the claimant has given to her treating sources indicate a broad range of independent function, including complete independence with eating, grooming, bathing, dressing, toileting, and mobility. The claimant's medical records consistently report that she was well nourished, and appropriately dressed and groomed. Dr. Booth reported that the claimant's abstract reasoning, judgment related to self-care, and social problem-solving appeared to be adequate, as evidenced by an understanding of personal safety, solution-focused ideas, and social interactions (Exhibit 13F). In her function report, the claimant reported that she could prepare meals, complete light housekeeping tasks, leave her residence independently, drive, shop in stores and online, and manage her finances (Exhibit 3E). The evidence received at the hearing level, including the testimony of the claimant, supports a finding that the claimant has a moderate limitation in her ability to adapt and manage herself.

Tr. at 20–21. Later, in determining the RFC, the ALJ stated:

> "[A]s discussed above, a psychiatric examination was completed by Dr. Artega. Dr. Artega reported that the mental status examination revealed that the claimant was appropriately dressed and groomed, cooperative, and calm, her speech was average, her mood was anxious and her affect was congruent, her thought process was goal directed and linear, she reported no visual or tactile hallucinations, her attention, concentration,

> and short term memory were intact, she had no apparent deficits in intellectual functioning, her intelligence appeared to be average based on fund of knowledge, vocabulary, and abstract reasoning, her insight was fair, her judgment was good (Exhibit 1F).
>
> …
>
> The claimant then had an initial telehealth visit with psychiatrist Troy Pulas, MD on October 21, 2024. Dr. Pulas reported that his initial examination revealed that the claimant was neatly dressed with good hygiene, she was calm, her mood was anxious, her affect was worried, she reported no hallucinations or delusions and no suicidal or homicidal ideation, her thought process was linear, logical, and goal directed, her sensorium was clear, her executive functioning was intact, her insight and judgment were intact, and no gross cognitive deficits were observed (Exhibit 10F). Dr. Pulas prescribed a regimen of medication and therapy, and the claimant had follow up visits with him on November 14, 2024 and December 16, 2024, with Dr. Pulas reporting similar mental status examination findings (Exhibit 10F).
>
> As discussed above, Dr. Booth completed the consultative psychological examination of the claimant on February 21, 2025. Dr. Booth reported diagnostic impressions of PTSD and unspecified anxiety disorder, and opined that the claimant's mental health symptoms, based on report and clinical observations appeared to be severely impacting her activities of daily living, vocational performance, and interpersonal interactions. In addition, Dr. Booth completed a medical source statement and opined that the claimant had moderate limitations in interacting with others, moderate limitations with simple tasks, marked limitations with complex tasks, and moderate limitations responding appropriately to usual work situations and changes in routine work setting (Exhibit 13F).

*Id.* at 23–24. In discussing the persuasiveness of Dr. Booth's opinion, the ALJ concluded:

> The opinion of Dr. Booth is partially persuasive because it is based on a clinical examination, and it is generally consistent with and supported by the objective clinical examination findings reported by the claimant's own providers, including Dr. Artega (Exhibit 1F) and Dr. Pulas (Exhibits 10F and 16F). However, **as discussed above**, the evidence received at the hearing level, including the testimony of the claimant, supports a finding that the claimant has a moderate limitation in understanding,

> remembering or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself.

*Id.* at 24–25 (emphasis added).

As previously discussed, in determining the persuasiveness of a medical source's medical opinions, supportability and consistency are the two most important factors. 20 C.F.R. § 416.920c(b)(2). The ALJ *must* explain the consideration of these two factors and *may*, but need not, explain consideration of the others. *Id.* As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). As to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2). In short, "the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record." *Perron*, 2024 WL 4144163, at *6; *see also Barber*, 2021 WL 3857562, at *3.

Plaintiff argues that the ALJ's discussion of Dr. Booth's opinion was conclusory and "boilerplate analysis at best" and fails to explain what evidence the ALJ considered. Doc. 19 at 14, 16–17. But "it is proper to read the ALJ's decision as a

whole, and ... it would be a needless formality to have the ALJ repeat substantially similar factual analyses[.]" *Raper*, 89 F.4th at 1275; *see also Hagins v. Comm'r of Soc. Sec.*, No. 8:24-cv-2129-SPF, 2025 WL 2445569, at *6 (M.D. Fla. Aug. 26, 2025); *Keene v. Comm'r of Soc. Sec.*, No. 6:24-cv-23-DCI, 2024 WL 3495014, at *4 (M.D. Fla. July 22, 2024); *Martin*, 2023 WL 3644419, at *7; *Jesus*, 2022 WL 2293887, at *4. Moreover, the ALJ expressly cited what had been "discussed above" already. Tr. at 24. And, properly read as a whole, including the ALJ's summary above (which Plaintiff does not meaningfully address), the ALJ's explanation was sufficient. *See id.* at 19–25. For example, the ALJ discussed both supportability (the results of Dr. Booth's examination) and consistency (other evidence, including records of Dr. Artega, records of Dr. Pulas, and Plaintiff's own statements), and explained the extent to which Dr. Booth's opinions were persuasive and why the limitations imposed in the RFC were sufficient. *See id.*

## IV. Conclusion

Accordingly, it is **ordered**:

1. The Commissioner's decision is **affirmed**; and

2. The Clerk of Court is **directed** to enter judgment in favor of Defendant and to close this file.

**DONE AND ORDERED** in Jacksonville, Florida, on November 20, 2026.

Samuel J. Horovitz
United States Magistrate Judge

Copies to:

Counsel of Record